The next case is Shaw v. Collins, number 24-1070. Mr. Niles, when you're ready. Thank you, Your Honor. And may it please the court, John Niles of Carpenter Chartered for Mrs. Shaw. And as always, when I appear as an officer of this court, I mention the latter because this is an appeal that has problems. And what I hope to do this morning is to spend about 90 seconds going through Mrs. Shaw's affirmative argument and then discussing those problems. And with hope, persuading Your Honors that her affirmative position survives each. Mrs. Shaw's principal position is that the Veterans Court erred in ordering dismissal. The Veterans Court has jurisdiction to review board denials, and that includes jurisdiction to review board denials that are implicit. When the board passes through a threshold issue on its way to deciding another issue that resides conceptually downstream of it, the board's decision as to that downstream issue then also reflects that the board has decided the issue at the threshold. And so here, the problem with this is that may apply in general direct appeal to board decisions. But this is a Q claim, and there are different rules for Q claims. Andre says you have to specifically allege the error. There are differences between Q claims and other contexts, Your Honor. But this particular upstream-downstream relationship is not one of them. The Veterans Court has chosen to adopt the Article III case or controversy requirements. Including that, it considers advisory opinions to be prohibited. And so in order then to reach whether to revise the September 1968 rating decision for Q, first of all, the Veterans Court must be able to show or must be able to reach and pass through the issue of whether the September 1968 rating decision has become final. And if it's not a final decision, there's no Q claim because it's still alive. You could file a separate challenge to the 1968. If the 1968 decision was still alive, you could file a notice of a disagreement to the board, right, if it was still alive. You don't attack it under a Q theory, though. I'll even go a step further back, Your Honor. And there are several different options. No, no, you don't have to go a step further. Your problem is, and I get your problem, your problem is that if you have a theory as to why the 1968 decision is no longer final, if Mr. Shaw was still alive, you could raise it under a regular route. But you can't. All Mrs. Shaw can do is step in and try to get the benefits for the claims that are pending, right? And the only theory still pending is a Q claim. Or then a DiCarlo communication made to the regional office in the first instance saying that September 1968 written decision is non-final. I'm sorry, I didn't understand that. Say that again. Yeah, so there is no prescribed form for saying that there is a pending unadjudicated claim or issue. Sure, but Mr. Shaw has to do it. Is there another vehicle out there that you think is that he has actually made this that she can step in the shoes of doing it? Because it's not going to be in this Q claim. His Q claim did not raise a finality theory. In fact, a Q claim can never raise finality theory because the premise of Q is that there is a final decision and a Q claim is a collateral attack on that final decision. And in appendix 117, Mr. Shaw, through counsel before the board, said that this is final. Right. That's right. So there are absolutely warts in this case. Mrs. Shaw, and I will submit that this is a different view. Right, and Mrs. Shaw is not attempting to renew the Q arguments he made. That's correct. OK. Her argument is that the 1968 decision was final. Is not final. Right, that was not part of the Q claim. Her. So no, no, that was not part of Mr. Shaw's Q claim, right? It wouldn't ever be part of Mr. Shaw's Q claim because if his argument that it's not final, it wouldn't be raised as a Q claim because it's a much harder burden for the veteran to meet. If he has an argument that there was no final decision, then he would just file a notice of disagreement, right? Or ask the RO and say, wait a minute, I still have this pending unadjudicated claim. Give me a decision on that. And I understand Your Honor's concerns. The only reasons why I'm not saying yes, yes, yes is because I do believe that Mrs. Shaw, and this would be a different case, would be able to say through a DiCarlo communication to the regional office at this point going forward that the September 1968 rating decision was never. Are you saying you think there's another vehicle out there for her to challenge the 1968 decision? Yes, Your Honor. Then why aren't you doing that instead of trying to inject a new theory into the Q claim that was clearly not before the board? The reason is clarity as to the Veterans Court's scope of jurisdiction at this point. Well, I don't think anything's unclear. The Veterans Court can't address a Q theory that wasn't raised to the board. And if you think this stuff about the other vehicle, I'm just asking because I think there might have been for the veteran. I don't know what your view is on her. If that's out there, I hope you're going to pursue it for her. But it doesn't seem like you can suggest that because a Q claim is premised on finality, that that necessarily encompasses as part of that Q claim a notion that it may not have been filed. That doesn't even make any sense. If you win on your argument that his 1968 claim was never finally adjudicated, then the Q claim is also improper. You can't file a Q claim against a non-final decision, right? I mean, the answer to that is yes. The answer to that is it can be filed. But what then the proper analysis would be is you filed the wrong thing. So either this is not the right vehicle, and you have a different vehicle, or she's in the unfortunate decision of Mr. Shaw could have filed something at the RO and revived this. But because she only gets to step in for passage of benefits on claims he had filed, she can't file a new thing. And you don't have to tell me what vehicle you think might be out there for her to step into. If you have one for her, please do it. Maybe she is entitled. Maybe the board or the RO didn't fully adjudicate his 1968 claim. That's not before us. Yes, Your Honor. So this does not sound promising, Ben, for Mr. Shaw. Just to- Well, if there's any more arguments you want to make, you've got about eight minutes. But I don't understand the basic premise of your argument that because a Q claim always involves a finality issue, because that's the only way it is a Q claim, that somehow the board and the Veterans Court can review whether it wasn't final under a Q vehicle. And so the premise of bringing a motion for revision for Q is absolutely a belief that a prior decision has become final. That belief is not always correct. This is a system where something like 90% of veterans appear without representation, and attorney representation, that is. And even attorneys don't always get this right. Q is very complex. Right. But if they get it wrong, then you file using the proper procedural vehicle, not the Q claim. And I would perfectly understand that with this court's decision. On Mrs. Shaw's interpretation of the law, as it exists in her understanding of the law, for the board and then for the Veterans Court to address Q, there must be a final decision. And for them then to reach that issue, to avoid issuing a prohibitive advisory opinion as to whether there was clear and unmistakable error in the September 1968 rating decision here, then that has to be non-final. Or rather, it has to be final. And so the issue of non-finality is one that we are in a claim stream today, where there are Q proceedings. They've been brought up to the board, brought up to the Veterans Court. The Veterans Court is looking at this board denial of Q. And so within its jurisdiction, then, it may address the finality of the September 1968 rating decision there and then without requiring, now, Mrs. Shaw to try to start over at the regional office and go up from there. And so this is- OK, I think we have your argument, Mr. Niles. Thank you, Your Honor. Let's hear from the government. And then you can respond. Good morning, and may it please the court. Your questions have reflected our position in the case, that first of all, the court need go no further than the abandonment analysis. The Veterans Court explicitly acknowledged that it did have jurisdiction in the case. It had jurisdiction over the Q claim that was presented to and decided by the board. The entirety of that claim was abandoned on appeal. So everything else that is in the brief, we're going to need. Can I just ask you, what would have happened if the Veterans Court had looked at Mr. Shaw's actual Q claims and then looked further in the record and said, wait a minute, the 1968 decision isn't final at all? They would then probably, would they have dismissed it for lack of jurisdiction because there actually isn't a final decision that you could attack under Q? So I think the answer to that could be found in the Veterans Court's analysis in the Richards case, which is cited in Bean, cited alongside laying the last paragraph of Bean. And that is 20 Vet Ab 64. There are certain types of Q claims, not the Q claim presented to the board in this case. But there are certain types of Q claims, for example, a Roberson type analysis. And it's like the one that's raised at page 175 to 120 of the appendix, where the argument is that in the decision being challenged, even though it was a decision on the claims, and it was received, and the notice of appeal rights was provided, so it could have been appealed, so it doesn't present the sort of issue that's discussed in Cook, where it's a notice problem that prevents the appellate process from functioning. So it is a Q claim. It's presumptively final. But the argument is that the clear and unmistakable error in that decision is that the VA failed to adjudicate a reasonably raised claim. So that comes up in the Roberson example, where someone is claiming one disability, and they're also saying, oh, and I can't work at all. And then the disability is resolved, but there's no TDIU claim resolved. The way to get at that allegedly pending TDIU claim is to bring a Q claim as to the decision on the resolved disability, and to say the VA failed to reasonably address all raised claims. And the way the Richards Court addresses this is to say, you bring the Q claim. The VA has to decide, was there another reasonably raised claim that was not decided and remains pending? If the VA determines that, then that pending claim is no longer part of a Q analysis. That has to be decided in the first instance. But the procedural vehicle to ask the VA to resolve whether there is a reasonably raised claim in a prior decision that wasn't addressed, you have to bring it through a Q claim, because you have all the prerequisites for an otherwise final decision. So I think that's what, when the Knowles case talks about. So your view is, I think, slightly different from Mr. Niles, that if there is some evidence that somehow there are pending unadjudicated claims from 68, you would still file a Q claim and explain how that is. But Ms. Shaw probably can't do that. That's right. Because under the decision in Cruz, she can't file a new Q claim. I do think that, actually. Do you agree with the concept that there might be another vehicle for Mrs. Shaw to get relief? You don't have to tell us the specific vehicle, but is there some possibility of relief here? I am not aware of one. I don't feel I can speak to that. But hypothetically, there's a letter or something out there that, after he got the final decision, he sent something to the VA that could have been construed as a notice of disagreement. If that's the case, then it's probably a pending unadjudicated claim. That would be a different scenario. And I think that would be more like what Knowles refers to, where there is genuinely something that has not been acted on. But you're not aware of anything in that? I'm not aware of that. And even if you were, it doesn't matter to this case. I mean, she can present those arguments to a regional office or the board that, look, after my husband got this decision, he actually did take steps to appeal it. That's not what the record we have here, though, is. Right. The Veterans Court decision simply said it did not possess jurisdiction to address these new claims. So it didn't issue any decision at all on them. So anything that was available before is not precluded by the Veterans Court's decision. It simply said it did not possess jurisdiction. And that remains true even if we affirm the Veterans Court, right? Exactly, because the court is affirming the jurisdictional decision by the Veterans Court. Anything further? Unless there are no further questions, we ask the court to affirm. Thank you. Thank you, Your Honor. It's one point to reiterate. And then, of course, be pleased to answer any questions the court has. The point to reiterate is that no matter what other options there are or not or might be for Mrs. Shaw to proceed through other procedural devices, she's here now. And the question is whether the Veterans Court are in dismissing the appeal. That is the one point I wanted to reiterate. And if the court appears to have no other questions, then I will wish the very best of my time. Thank you. Thank you. The case is submitted.